**UNITED STATES of America, Plaintiff,**

**v.**

**Melvin PINE, Joan L. Pine, Steven R. Pine and Suzan Pine, Defendants.**

**No. 64–C–150.**

United States District Court
E. D. Wisconsin.

July 17, 1969.

James B. Brennan, U. S. Atty., by Thomas R. Jones, Asst. U. S. Atty., Mil-

---

waukee, Wis., and James H. Jeffries, III, Trial Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

No appearance for defendants.

REYNOLDS, District Judge.

## OPINION AND ORDER

This is an action brought by the Government to reduce to judgment the outstanding federal tax liabilities of the defendant-taxpayer, Melvin Pine, and to foreclose liens on the cash surrender value of insurance policies owned by Melvin Pine. The matter is now before the court on the Government's motion to transfer this action to the District Court for the Southern District of New York pursuant to § 1406(a) of Title 28 of the United States Code.

## JURISDICTION

This action was filed by the Government pursuant to §§ 7401 and 7403 of the Internal Revenue Code of 1954. The jurisdiction of this court is based on §§ 1340 and 1345 of Title 28 of the United States Code and § 7402(a) of the Internal Revenue Code of 1954.

## FACTS

On November 24, 1954, the Tax Court of the United States adjudged the defendant-taxpayer, Melvin Pine, indebted to the Government for unpaid taxes in the net amount of $387,291.66. This amount was then assessed against the defendant-taxpayer, Melvin Pine, by a delegate of the Secretary of the Treasury. Demand for payment of this sum was made, but full payment thereof was not made, and there remained outstanding and owing to the Government the amount of $369,806.66. Notice of federal tax liens securing this assessment was filed in New York, New York, on October 6, 1961.

On November 3, 1961, additional assessments in the amount of $3,178.94 were made against the defendant-taxpayer, Melvin Pine, by a delegate of the Secretary of the Treasury. Notice of these additional assessments was given and payment thereof demanded, but payment was not made, and there remained outstanding and owing to the Government on these assessments an additional amount of $3,178.94. Notice of federal tax liens securing these assessments was filed in New York, New York, on November 20, 1961.

The defendant-taxpayer, Melvin Pine, submitted offers in compromise of the tax liability adjudged by the Tax Court on November 24, 1954, in which he agreed to the suspension of the statute of limitations applicable to the collection of the assessment of those taxes for the period during which the offer was pending plus one year thereafter. Although no compromise resulted, by virtue of these agreements the statute of limitations upon instituting an action to collect such liability was extended to November 7, 1967.

On or about October 10, 1945, the Northwestern Mutual Life Insurance Company had issued two life insurance policies numbered 3–388–750 and 3–388–751, both in the face amount of $15,000.00, on the life of the defendant-taxpayer, Melvin Pine; the designated beneficiary under the former policy was Steven R. Pine with Suzan Pine and Joan L. Pine as contingent beneficiaries; and the designated beneficiary under the latter policy was Suzan Pine with Steven R. Pine and Joan L. Pine as contingent beneficiaries. The defendant-taxpayer had applied for and obtained these policies, and he had reserved the right to change beneficiaries, to obtain the cash surrender values, and to change the loan and surrender privileges.

Therefore, on July 2, 1962, a notice of levy was served on the Northwestern Mutual Life Insurance Company specifically notifying the defendant that the assessments described above had been

made against the defendant-taxpayer and that liens existed upon all of his property or rights to property, and further notifying it that all property, rights to property, moneys, credits, and bank deposits in its possession belonging to the defendant-taxpayer, or with respect to which it was obligated, and all sums of money or other obligations owing from it to the defendant-taxpayer were levied upon and seized for satisfaction of his tax liabilities, and further demanding the amount necessary to satisfy the liabilities or such lesser sum as it was indebted to him. On February 21, 1963, a final demand was served on the Northwestern Mutual Life Insurance Company, but it was not honored.

The present action was begun on May 28, 1964, in this district because the Government had reason to believe that the defendant-taxpayer, Melvin Pine, had left the United States for the purpose of evading collection of his federal tax liabilities, and his only known assets within the United States were the aforementioned insurance policies with Northwestern Mutual Life Insurance Company, located within this district. The Government's complaint asked that the outstanding federal tax liabilities of Melvin Pine be reduced to judgment and that the liens on the cash surrender value of the Northwestern Mutual Life Insurance policies owned by Melvin Pine be foreclosed. Pursuant to order of this court authorizing service according to Title 28 U.S.C. § 1655, copies of the complaint were sent to the individual defendants at their last known address in Mexico. These copies were returned "addressee unknown."

On May 16, 1966, however, during the pendency of this suit, the defendant-taxpayer, Melvin Pine, made another offer in compromise of his federal tax liabilities. In September 1966, that offer was accepted by the Attorney General of the United States of America provided that Pine would submit to the jurisdiction of this court in order that a personal judgment could be entered against him to secure the installment payments of his offer. In November 1966, the taxpayer, Melvin Pine, tentatively agreed to the Attorney General's condition. Thereafter, however, Pine refused to sign the stipulated judgment or to otherwise meet any of the terms of his offer in compromise.

In the meantime, the aforementioned Northwestern Mutual Life Insurance Company policies were permitted to lapse by the defendant-taxpayer, Melvin Pine, so that recovery against Northwestern Mutual Life Insurance Company became impossible. Accordingly, this action was dismissed as against the Northwestern Mutual Life Insurance Company by order of this court based on a stipulation entered into between the Government and the Northwestern Mutual Life Insurance Company.

On December 3, 1968, the Government filed a motion to transfer this action to the United States District Court for the Southern District of New York pursuant to § 1406(a) of Title 28 of the United States Code. Copies of this motion and notification of a briefing schedule were sent by registered mail to the individual defendants' last known address in Mexico. The registered mail receipts were returned, but no reply was ever received from the defendants.

In support of its motion, the Government has set forth the foregoing facts and, in addition thereto, affidavits as to the following additional facts.

The taxpayer-defendant, Melvin Pine, is now residing in Mexico where he is not amenable to personal service in this action.

The statute of limitations on suit for collection of $369,806.66 of the aforementioned liabilities expired on November 7, 1967.

Much of the tax liability at issue here arose from transactions by Melvin Pine in New York, New York, which would

render him amenable to extraterritorial personal service under § 302 of the New York Civil Practice Law and Rules and Rule 4(i) of the Federal Rules of Civil Procedure. Such amenability to service would permit the District Court for the Southern District of New York to acquire *in personam* jurisdiction over Melvin Pine for the purpose of rendering the personal judgment against him sought by this action.

## WOULD TRANSFER OF THIS ACTION BE IN THE INTEREST OF JUSTICE

Section 1406(a) of Title 28 of the United States Code provides:

"(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

This action was brought in this district because the defendant-taxpayer, Melvin Pine, was believed to have fled from the United States to avoid collection of his federal tax liabilities and his only known assets were located within the jurisdiction of this court.

The taxpayer, Melvin Pine, permitted those assets, insurance policies with the Northwestern Mutual Life Insurance Company, to lapse and become worthless. Pine himself cannot be served within the State of Wisconsin and is not amenable to service under § 262.05 of the Wisconsin Statutes as provided for by Rule 4(i) of the Federal Rules of Civil Procedure. Consequently, venue in this district is no longer proper.

The statute of limitations on a suit for collection of all but a minute portion of these taxes has expired. However, the taxpayer, Melvin Pine, is susceptible to extraterritorial personal service and *in personam* jurisdiction of the United States District Court for the Southern District of New York by virtue of the provisions of § 302 of the New York Civil Practice Law and Rules and Rule 4(i) of the Federal Rules of Civil Procedure.

In interpreting the scope and purpose of § 1406(a), the Supreme Court in *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465, 82 S.Ct. 913, 915–16, 8 L.Ed.2d 39 (1962), has said:

"* * * Nothing in that language indicates * * * the section was intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants. And we cannot agree that such a restrictive interpretation can be supported by its legislative history. * * *

"The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not. The section is thus in accord with the general purpose which has prompted many of the procedural changes of the past few years—that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits. When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply. The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure. If by reason of the uncertainties of proper venue a mistake is made, Congress, by the enactment of § 1406 (a), recognized that 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by what the late Judge Parker aptly characterized as

'time-consuming and justice-defeating technicalities.' It would at least partially frustrate this enlightened congressional objective to import ambiguties into § 1406(a) which do not exist in the language Congress used to achieve the procedural reform it desired."

The present action is not one in which venue was "wrong" at the time the action was begun. Rather, it is an instance in which venue has become "wrong" due to the inaction of the defendant in permitting the aforementioned insurance policies to lapse. Recent decisions, however, have taken the position that a district is "wrong" within the meaning of § 1406(a) whenever there exists an obstacle to an expeditious and orderly adjudication on the merits so that the litigation may not proceed in such district. Dubin v. United States, 380 F.2d 813 (5th Cir. 1967); Mayo Clinic v. Kaiser, 383 F.2d 653 (8th Cir. 1967). I am of the opinion that the construction so accorded § 1406(a) is in line with the teaching of *Goldlawr*, supra, and concur in the conclusion reached in *Dubin* and *Mayo*, supra, that inability to perfect service on a defendant in an otherwise correct venue is an obstacle of the nature sought to be avoided by the provisions of § 1406(a). For the foregoing reason, I believe that this district is "wrong" within the meaning of § 1406(a).

It further appearing that this district has become "wrong" due to inaction of the defendant-taxpayer in permitting the insurance policies to lapse; that the statute of limitations would prevent the Government from instituting another suit for collection of most of the tax liability at issue; and the Southern District of New York being a district in which this action could initially have been brought, I hold that in the interest of justice this action should be and it hereby is transferred to the United States District Court for the Southern District of New York.